E-FILED
Tuesday, 03 March, 2026 01:55:30 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| FRANCES HOWELL, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RK HOLDINGS, LLP d/b/a RURAL KING,<br><br>Defendant. | CIVIL ACTION<br><br>Case No. 2:26-cv-2063-CSB-EIL<br><br>JURY TRIAL DEMANDED |

## COLLECTIVE ACTION COMPLAINT

Plaintiff, Frances Howell ("Howell" or "Plaintiff"), files this Collective Action Complaint against Defendant, RK Holdings, LLP d/b/a Rural King ("Defendant" or "Rural King"), seeking all available relief under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), on behalf of herself and all current and former Assistant Managers ("AMs"), however variously titled,[1] who work (or worked) at any "Rural King" supermarket in the United States during the relevant time period. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## NATURE OF THE ACTION

1. Plaintiff brings this action on behalf of herself and similarly situated current and former AMs to recover unpaid overtime pursuant to the FLSA. Defendant violated the FLSA by

[1] Upon information and belief there are four AM positions with each Rural King store: AM-Home, AM-Farm, AM-Softlines, and AM-Food. When using the AM term Plaintiff refers collectively to the four positions.

failing to pay its AMs, including Plaintiff, overtime compensation for the hours they worked over forty (40) in one or more workweeks because Defendant classified them as exempt from overtime.

2. Upon information and belief, Defendant employs AMs in over 130 Rural King locations in at least 13 states, including Alabama, Florida, Illinois, Indiana, Kentucky, Michigan, Missouri, North Carolina, Ohio, Pennsylvania, Tennessee, Virginia, and West Virginia. "Rural King" stores are general merchandise and department stores which offer goods and services for sale to the public.

3. Although Defendant considers its AMs to be "managers," AMs are not responsible for true management functions. To the contrary, AMs spend the vast majority of their time performing the same duties as non-exempt employees, including helping customers, working the cash register, moving products, stocking shelves, cleaning the store, and otherwise standing in as a cashier, stocker, or other hourly worker.

4. AMs report to Store Managers who, in turn, report to district and other supervisory personnel. Store Managers are the highest level of management in Rural King's stores.

5. As alleged herein, Plaintiff and all other similarly situated AMs were required to work more than forty (40) hours in a workweek while employed by Defendant in order to complete their job duties. However, in accordance with Defendant's policy, pattern, and/or practice, they were misclassified as exempt from overtime compensation and were not paid at the mandated rate of time-and-one-half for all hours worked in excess of forty (40) in a workweek.

6. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings this action on behalf of themselves and all persons who are or were formerly employed by Defendant in the United States during the relevant time period as AMs, and individuals holding comparable salaried positions with different titles (the "AM Collective").

7. Defendant's systematic failure and refusal to pay Plaintiff and all other similarly situated ASMs for all hours worked over forty (40) in a workweek violates the FLSA.

## THE PARTIES

***Plaintiff Frances Howell***

8. Howell resides in Morganton, North Carolina. Between approximately December 2024 and July 2025, Howell was employed by Defendant as an AM at a Rural King store in Morganton, North Carolina.

9. Throughout her employment as an AM with Defendant, Howell was paid a salary and did not receive overtime compensation for working more than forty (40) hours in a work week.

10. As an AM, Howell was scheduled to work at least fifty-five (55) hours a week, comprising five 11-hour shifts (with a 60-minute lunch break each shift), though she worked more and often took an uninterrupted lunch break. On average, during each week of her employment as an AM with Defendant, Howell worked approximately 50-60 hours (and sometimes more), including during the weeks leading up to, during, and after Christmas in 2024 and Easter in 2025.

11. Howell spent the vast majority of her time performing the same duties as non-exempt employees, including helping customers, working the cash register, moving products, stocking shelves, cleaning the store, and otherwise standing in as a cashier, stocker, or other hourly worker.

12. The work Howell performed was at the direction, and for the benefit, of Defendant.

13. Pursuant to Defendant's policy, pattern or practice of classifying AMs as exempt from overtime, Howell was not paid premium overtime compensation for all hours worked over forty (40) in a work week.

14. Howell has consented to join this action. *See* Exhibit A.

***Defendant RK Holdings, LLP***

15. RK Holdings, LLP d/b/a Rural King is an Illinois corporation with its principal place of business located at 4216 Dewitt Avenue, Mattoon, Illinois 61938.

16. Rural King owns and operates over 130 "Rural King" branded stores in at least 13 states, including Illinois.

17. At all relevant times, Rural King employed or acted in the interest of an employer towards Plaintiff and other similarly situated current and former AMs and, among other things, maintained control, oversight and direction over Plaintiff and other AMs, including with respect to timekeeping, payroll, and other employment practices that applied to them.

18. Upon information and belief, Rural King applies the same employment policies, practices, and procedures to all AMs, regardless of the location of the store in which they work.

19. Rural King is a covered employer within the meaning of the FLSA because, among other things, it employs individuals, including Plaintiff, who are engaged in interstate commerce or in the production of goods for interstate commerce or engaged in handling, receiving, selling, or otherwise working on goods or material that have been moved in or produced for interstate commerce.

20. Upon information and belief, at all relevant times Rural King has had gross revenues exceeding $500,000.00.

**JURISDICTION AND VENUE**

21. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1332, 1337, and 29 U.S.C. § 216(b).

22. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

23. Defendant is subject to personal jurisdiction in Illinois.

24. Defendant purposely availed itself of jurisdiction by operating its business, including approximately 10 "Rural King" stores, in Illinois.

25. Venue is proper in the Central District of Illinois pursuant to 28 U.S.C. § 1391(b) since a substantial part of the events or omissions giving rise to the claims in this Collective Action Complaint occurred within this District and because Defendant resides in this District.

## GENERAL FACTUAL ALLEGATIONS

26. Rural King is a privately held corporation with its corporate headquarters located in Mattoon, Illinois.

27. Upon information and belief, Rural King's store operations are directed and controlled by individuals based out of its corporate headquarters.

28. According to its website, Rural King is "American's Farm and Home Store, and a General Merchandise and Department Store, providing essentials to the communities [it] serve[s]." Rural King describes itself as having "an outstanding product mix with items such as livestock feed, farm equipment, agricultural parts, lawn mowers, workwear, fashion clothing, housewares and toys."[2]

29. Defendant owns and operates over 130 Rural King locations in at least 13 states, including Alabama, Florida, Illinois, Indiana, Kentucky, Michigan, Missouri, North Carolina, Ohio, Pennsylvania, Tennessee, Virginia, and West Virginia.[3]

30. Upon information and belief, Rural King employs hundreds of full- and part-time employees in its stores, of which several hundred are believed to be full-time AMs.

---

[2] *See* https://www.ruralking.com/about-us (last accessed March 2, 2026).
[3] *Id.*

31. Defendant maintains strict control, oversight, and discretion over the operation of its stores, including its employment practices with respect to Plaintiff and the members of the putative AM Collective.

32. Plaintiff's and the members of the putative AM Collective's work was performed in the normal course of Defendant's business and was integrated into it.

33. Consistent with Defendant's policy, pattern and/or practice, Plaintiff and the members of the putative AM Collective worked in excess of forty (40) hours per workweek without being paid overtime compensation. For example, and upon information and belief, AMs are scheduled to work at least five 11-hour shifts each week, totaling fifty-five (55) hours (with a 60-minute lunch break each shift). However, AMs routinely work more hours and are often able to take an uninterrupted 60-minute lunch break.

34. Upon information and belief, Defendant established labor budgets to cover labor costs for the stores in which Plaintiff and the members of the putative AM Collective worked. However, Defendant did not provide sufficient money in the labor budgets to cover all hours needed to complete the necessary non-exempt tasks in each store.

35. Defendant knew or recklessly disregarded the fact that their underfunding of store labor budgets resulted in Plaintiff and the members of the putative AM Collective (who were not paid overtime) working more than forty (40) hours in a workweek without receiving any overtime compensation. This allowed Defendant to avoid paying additional wages (including overtime) to the non-exempt, store-level employees.

36. Because Defendant underfunded store labor budgets, which in turn limited the amount of money available to pay non-exempt employees to perform manual and customer service tasks, AMs were required to—and did—perform these non-exempt tasks.

37. The performance of non-management work was the primary duty of Plaintiff and the members of the AM Collective. These primary duties included helping customers, working the cash register, moving products, stocking shelves, cleaning the store, and otherwise standing in as a cashier, stocker, or other hourly worker.

38. Defendant knew, by virtue of the fact that its upper-level management employees (as its authorized agents) actually saw Plaintiff and the members of the putative AM Collective primarily perform manual labor and non-exempt duties, that Plaintiff and other similarly situated AMs were not performing activities that complied with any FLSA exemption. Inasmuch as Defendant is a substantial corporate entity aware of its obligations under the FLSA, it acted willfully or recklessly in failing to classify Plaintiff and other similarly situated AMs as non-exempt employees.

39. All of the work that Plaintiff and the members of the putative AM Collective performed has been assigned by Defendant, who is aware of the work they performed. This work required little skill and no capital investment. Nor did it include managerial responsibilities, or the exercise of meaningful independent judgment and discretion.

40. Pursuant to a centralized, company-wide policy, pattern and/or practice, Defendant classified all AMs as exempt from the overtime provisions of the FLSA.

41. The primary job duties of Plaintiff and the members of the putative AM Collective did not include hiring, firing, disciplining, or directing the work of other employees.

42. The primary job duties of Plaintiff and the members of the putative AM Collective did not materially differ from the job duties of non-exempt hourly paid employees.

43. The primary job duties of Plaintiff and the members of the putative AM Collective did not include the exercise of meaningful independent discretion with respect to their duties.

44. The primary job duties of Plaintiff and the members of the putative AM Collective were manual and/or clerical in nature. The performance of manual and/or clerical labor occupied the majority of the working hours of Plaintiff and the members of the putative collective.

45. Plaintiff and the members of the putative AM Collective are similarly situated in that they have substantially similar job duties and are subject to Rural King's common compensation policies, patterns, and/or practices.

46. Upon information and belief, Defendant did not perform a person-by-person analysis of Plaintiff's and the members of the putative AM Collective's job duties when making the decision to classify AMs as exempt from overtime under the FLSA.

47. Due to the foregoing, Defendant's failure to pay overtime wages for work performed by Plaintiff and the members of the putative AM Collective in excess of forty (40) hours per week was willful.

48. The work performed by Plaintiff and the members of the putative AM Collective constitutes compensable work time under the FLSA and was not preliminary, postliminary or *de minimis*.

49. Defendant's unlawful conduct has been widespread, repeated, and consistent.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

50. Plaintiff brings the First Cause of Action, 29 U.S.C. § 216(b), on behalf of themselves and the members of the putative ASM Collective.

51. At all relevant times, Plaintiff and the members of the putative AM Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

52. Defendant employed Plaintiff and the members of the putative AM Collective and

are engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

53. At all relevant times, Plaintiff and the members of the putative AM Collective were employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

54. Defendant has failed to pay Plaintiff and the members of the putative AM Collective overtime compensation to which they are entitled under the FLSA.

55. Defendant has failed to keep accurate records of time worked by Plaintiff and the members of the putative AM Collective.

56. Defendant is liable under the FLSA for, among other things, failing to properly compensate Plaintiff and the members of the putative AM Collective.

57. Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the putative AM Collective were not paid overtime compensation when they worked beyond forty (40) hours in a workweek.

58. All of the work that Plaintiff and the members of the putative AM Collective performed has been assigned by Defendant, and/or Defendant has been aware of such work.

59. As part of its regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the putative AM Collective. This policy and pattern or practice includes, but is not limited to:

(a) willfully failing to pay Plaintiff and the members of the putative AM Collective premium overtime wages for hours that they worked in excess of forty (40) hours per workweek;

(b) willfully misclassifying Plaintiff and the members of the putative AM Collective as exempt from the overtime protections of the FLSA; and

(c) willfully failing to record all of the time that its employees, including Plaintiff and the members of the putative AM Collective, worked for the benefit of Defendant.

60. Defendant is aware or should have been aware that federal law required it to pay Plaintiff and the members of the putative AM Collective overtime compensation for all hours worked in excess of forty (40) in a workweek.

61. Plaintiff and the members of the putative AM Collective perform or performed the same primary duties.

62. Defendant's unlawful conduct has been widespread, repeated, and consistent.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act: Unpaid Overtime Wages**
**(Brought on Behalf of Plaintiff and the AM Collective)**

63. Plaintiff realleges and incorporates by reference the above allegations.

64. Defendant has engaged in a widespread policy, pattern or practice of violating 29 U.S.C. § 207 by failing to pay overtime compensation to Plaintiff and the members of the putative AM Collective for hours worked above forty (40) in a work week, as detailed in this Collective Action Complaint.

65. Upon information and belief, and as part of their regular business practices, Defendant has intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiff and the members of the putative AM Collective.

66. Defendant's unlawful conduct, as described above, was willful and/or in reckless disregard of the applicable wage and hour laws pursuant to Defendant's centralized, company-wide policy, pattern, and/or practice of attempting to minimize labor costs by violating the FLSA.

67. As further evidence of its willful or reckless failure to classify Plaintiff and the members of the AM Collective as non-exempt employees, Defendant has uniformly failed to: (a)

accurately track or record actual hours worked by Plaintiff and the members of the putative AM Collective; and (b) provide Plaintiff and the members of the putative AM Collective with a method to accurately record the hours they actually worked.

68. Defendant did not make a good-faith effort to comply with the FLSA with respect to their timekeeping and compensation of Plaintiff and the members of the putative AM Collective.

69. Defendant was or should have been aware that the FLSA required it to pay employees performing non-exempt duties an overtime premium for hours worked in excess of forty (40) per week.

70. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the members of the putative AM Collective for all hours worked in excess of forty (40) in a workweek.

71. Upon information and belief, there are potentially hundreds of similarly situated current and former AMs who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. Thus, notice should be sent to the members of the putative AM Collective, pursuant to 29 U.S.C. § 216(b).

72. The members of the putative AM Collective are known to Defendant, are readily identifiable, and can be located through Defendant's records.

73. Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255, as it may be further extended or tolled by agreement, equity or operation of law.

74. As a result of Defendant's willful violations of the FLSA, Plaintiff and the members of the putative AM Collective have suffered damages by being denied overtime compensation in

accordance with the FLSA, in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages and attorneys' fees, pursuant to 29 U.S.C. § 216(b).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the putative AM Collective, prays for the following relief:

1. Designation of this action as an FLSA collective action on behalf of Plaintiff and the members of the putative AM Collective, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the AM Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join forms pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;
2. An award of unpaid overtime compensation for all hours worked in excess of forty (40) in a workweek at a rate of time and one-half of the regular rate of pay due under the FLSA using the following common methodology for calculating damages: ((Annual Salary ÷ 52) ÷ 40) x Total Number of Overtime Hours Worked x 1.5;
3. An award of liquidated damages under the FLSA as a result of Defendant's willful failure to pay for all hours worked in excess of forty (40) in a workweek at a rate of time and one-half of the regular rate of pay;
4. An award of damages representing Defendant's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;
5. An award of a service payment to Plaintiff;
6. An award of pre-judgment and post-judgment interest;

7. An award of costs and expenses of this action, together with reasonable attorneys' and expert fees to Plaintiff's counsel pursuant to the FLSA;

8. An injunction requiring Defendant to cease its practice of violating the FLSA in the future;

9. Issuance of a declaratory judgment that the practices complained of in this Collective Action Complaint are unlawful and/or willful under the FLSA; and

10. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Collective Action Complaint.

Dated: March 2, 2026

*/s/ Ronald S. Langacker*

Ronald S. Langacker
**LANGACKER LAW, LTD.**
210 N. Broadway
Urbana, IL 61801
Telephone: (217) 954-1025
Fax: (217) 903-5255
ron@langackerlaw.com

Jason Conway*
**CONWAY LEGAL, LLC**
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Telephone: (215) 278-4782
Fax: (215) 278-4807
jconway@conwaylegalpa.com

Daniel Levin, Esq.*
Zanetta Moore-Driggers, Esq.*
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
dlevin@lfsblaw.com
zmooredriggers@lfsblaw.com

***Attorneys for Plaintiff and the Putative AM Collective***

* *Application for Admission Forthcoming*